<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| TYREE MOORE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA,<br><br>　　　　　　Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 24-6778 (KMW-AMD)<br><br>**OPINION** |

**Appearances:**

**Tyree Moore**
154 Baker Avenue
Atco, NJ 08004

*Pro se Plaintiff*

**Philip Andrew Goldstein, Esq.**
**Shan P. Massand, Esq.**
McGuire Woods LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020

*Counsel for Defendant Bank of America*

**WILLIAMS, District Judge:**

## I.　INTRODUCTION

*Pro se* Plaintiff Tyree Moore ("Plaintiff") brings this action against Defendant Bank of America ("Defendant") alleging that Defendant violated the Fair Credit Reporting Act ("FCRA"). This matter comes before the Court on Defendant's Motion for Summary Judgment (ECF No. 58) under Federal Rule of Civil Procedure 56. Plaintiff opposed (ECF No. 61), and Defendant replied (ECF No. 63). For the reasons articulated below, Defendant's Motion for Summary Judgment (ECF No. 58) is **GRANTED**.

## II.   BACKGROUND

### A.   Procedural Background

On June 5, 2024, Plaintiff filed a *pro se* Complaint against Defendant alleging that it had violated the FCRA by furnishing inaccurate information to the "major credit reporting agencies – Experian, TransUnion, and Equifax." (ECF No. 1-4. at p. 1).[1] On June 18, 2024, the Court granted Plaintiff's application to proceed *in forma pauperis* (ECF No. 3), the Complaint was filed, and on July 9, 2024, the summons was returned executed, indicating that Defendant had been served on July 2, 2024. (ECF No. 6).

On December 19, 2024, the Honorable Sharon A. King, Magistrate Judge, entered an amended scheduling order ("ASO") which, among other things, advised the parties that "[t]he time within which to seek amendments to the pleadings or add new parties will expire on **December 30, 2024**." (ECF No. 25 at ¶ 3)[2] (emphasis in original). The ASO also stated, "[e]xcept as otherwise permitted in the Federal or Local Rules of Civil Procedure, leave of Court is necessary to file an amended pleading." (*Id.*). Further, the ASO required parties to "meet and confer in person or by phone about [requests for leave to amend pleadings]." (*Id.*).

On January 7, 2025, after the timeframe to amend pleadings had expired, and without requesting leave of Court,[3] Plaintiff filed an Amended Complaint, which added claims against Defendant for violations of the Uniform Commercial Code ("UCC"), the Electronic Fund Transfer Act ("EFTA"), Securities Fraud, Fraud and Misrepresentation, and Unconscionable Practices and Duress. (*See* ECF No. 26 at ¶¶ 24-31).

---

[1] In his initial filings, Plaintiff filed a Complaint form (ECF No. 1) that included the names of the parties but was substantively blank. The substance of Plaintiff's allegations was contained in a letter attached to the form, which is found at ECF No. 1-4. As such, the Court will refer to Plaintiff's letter as the Complaint. For ease of reference, the Court will cite to ECF No. 1-4 when referring to the Complaint.

[2] Amended Scheduling Order (ECF No. 25 at ¶ 3).

[3] Defendant also contends that Plaintiff did not attempt to meet and confer with Defendant prior to filing the amended complaint, which further violated Judge King's explicit Order. (Def.'s Br. at p. 2 n. 1).

On October 14, 2025, Defendant filed its Motion for Summary Judgment (ECF No. 58). On October 23, 2026, Plaintiff opposed Defendant's Motion. (ECF No. 61). On October 29, 2025, the Court, having reviewed Plaintiff's Opposition, noted that Plaintiff had not complied with Local Civ. R. 56.1, which requires the non-movant to submit a responsive statement to the movant's Statement of Undisputed Material Facts. (ECF No. 62). The Court ordered Plaintiff to comply with Local Rule 56.1 by filing his responsive statement by November 3, 2025, and extended Defendant's deadline to reply to Plaintiff's Opposition to November 10, 2025. (*Id.*). Plaintiff did not comply with the Court's Order and failed to file a responsive statement to Defendant's Statement of Undisputed Facts. Defendant timely filed its Reply on November 10, 2025. (ECF No. 63). The motion for summary judgment is now ripe for disposition. The Court has considered the parties' written submissions, finds oral argument unnecessary, and decides the motion on the papers.

### B.    Factual Background[4]

Plaintiff opened a consumer credit card account ("Account") with Defendant on January 12, 2022. (SUMF at ¶ 1). Plaintiff used the Account and carried a balance through 2024, making payments until February 2024. (SUMF at ¶ 2). In 2023, Plaintiff made three payments on the

---

[4] Under Local Civil Rule 56.1, when a party files a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the movant is required to submit a statement identifying the undisputed material facts ("SUMF") and cite to the record for support. *See* L. Civ. R. 56.1. The Rule also mandates that the opponent of the motion "furnish, with is opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement, and if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion." *Id.* The rule is unambiguous: unaddressed facts are deemed undisputed by operation of the rule itself. When the nonmovant fails to file a responsive statement under Rule 56.1, courts have consistently deemed the facts in the movant's SUMF undisputed. *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 663 (D.N.J. 2018); *Kelly, v. Ewing Twp.*, No. 24-10824 (MAS) (RLS), 2026 WL 412440, at *1 (D.N.J. Feb. 13, 2026); *Lee v. Valvoline Instant Oil Change*, No. 21CV12825ZNQDEA, 2023 WL 6579004, at *3 (D.N.J. Oct. 10, 2023); *Liles v. Camden Cnty. Dep't of Corr.*, 225 F. Supp. 2d 450, 457 (D.N.J. 2002). Here, not only did Plaintiff fail to file a responsive statement with his opposition papers, he also did not comply with the Court's subsequent order explicitly requiring him to file a responsive statement. (*See* ECF No. 62). As such, unless the Court's review of the record indicates otherwise, the Court deems all facts in Defendant's SUMF undisputed for the purposes of deciding the motion for summary judgment.

Account that were returned unpaid.[5] (SUMF at ¶¶ 3–4). As a result of those returned payments, Defendant closed the Account and notified Plaintiff of such in a letter dated September 27, 2023. (SUMF at ¶¶ 5–6).

In November 2023, January 2024, and February 2024, after the Account was closed, Plaintiff made additional payments, all of which were returned unpaid. (SUMF at ¶ 7). The last payment that was not returned unpaid was made on December 15, 2023. (SUMF at ¶ 10). Each time a payment was returned unpaid, Defendant sent Plaintiff a letter notifying him that his payment had been returned unpaid and requesting that he submit a replacement payment. (SUMF at ¶¶ 11–12).

Plaintiff stopped making payments on the Account altogether after February 2024. (SUMF at ¶ 13). On or about February 22, 2024, Defendant charged off the Account as bad debt, at which time the Account had an outstanding balance of $530.50. (SUMF at ¶¶ 14–15). Defendant reported the Account to credit reporting agencies ("CRAs") as charged off, using a status code that indicated the Account maintained an unpaid balance that was reported as a loss. (SUMF at ¶ 16). Plaintiff, however, alleges that the reporting of the Account as delinquent and charged off is inaccurate and does not reflect his payment history. (ECF No. 1-4 at p. 13; Pl.'s Opp. at p. 2).

On March 19, 2024, Plaintiff submitted a fraud dispute directly to Defendant regarding the Account. (SUMF at ¶ 17). Defendant reviewed the information provided by Plaintiff, the Account history, monthly Account statements, and other information associated with the Account in connection with this fraud claim. (SUMF at ¶ 19). After that review, Defendant denied Plaintiff's fraud claim in a letter dated May 20, 2024. (SUMF at ¶¶ 18–19). In that letter, Defendant advised Plaintiff that it had confirmed that account statements were mailed to his address and that

---

[5] The payments that were returned unpaid were made in in January, August, and September.

payments had been made on the Account. (SUMF at ¶ 20).

Separately, Plaintiff submitted disputes to CRAs regarding the reporting of the Account, including two disputes to Experian and two disputes to TransUnion. (SUMF at ¶ 22). On March 17, 2024, Defendant received a dispute from Experian indicating that Plaintiff disputed the Account's status, payment rating, and account history. (SUMF at ¶¶ 23–24). In response, Defendant reviewed the Account records and compared the information reported to the CRA with its internal records and the information provided at the time of the Account application. (SUMF at ¶ 25). Following that review, Defendant contends that the response code it sent to Experian read: "23: Disputed Information Accurate. Updated Account Information Unrelated to the Dispute."[6] (SUMF at ¶ 27). Defendant also contends that its response confirmed that the Account was charged off, closed, and reflected delinquencies in January and February 2024. (SUMF at ¶¶ 28–29). Plaintiff alleges that this reporting is inaccurate, including the reported payment history and delinquency status. (ECF No. 1-4 at p. 9; Pl.'s Opp. at p. 2).

On April 11, 2024, Defendant received a second dispute from Experian indicating that Plaintiff claimed, "account take-over, fraudulent charges made on account." (SUMF at ¶¶ 31–32). In response, Defendant again reviewed the Account records, including the reported data and account history, and verified that the information matched its records and the original account information. (SUMF at ¶ 37). Defendant contends that it "included a response code of '01 – Account Information accurate as of date reported.'" (SUMF at ¶ 33).[7] However, Plaintiff maintains that the charges were fraudulent and that Defendant failed to properly investigate those fraud

---

[6] While Defendant contends that its response to the ACDV "included a response code of '23: Disputed Information Accurate. Updated Account Information Unrelated to the Dispute,'" (SUMF at ¶ 27), upon independent review of the ACDV report itself, the Court can confirm only that the response code entered was "23." The record does not contain evidence defining response code 23 or explaining the meaning of any response codes used in the ACDV materials. (*See* Goldstein Dec., Ex. C at pp. 3-4).

[7] As with the first ACDV, the Court's review of the report indicated a response code of 01 without any further evidence defining or explaining the meaning of code 01. (*See* Goldstein Dec., Ex. C at p. 5-6).

5

allegations. (Pl.'s Opp. at p. 1–2).

On May 25, 2024, and June 2, 2024, Defendant received two additional disputes from TransUnion. (SUMF at ¶¶ 38, 45). These disputes included allegations of fraudulent charges, account takeover, inaccurate balances, incorrect payment history, and assertions that Plaintiff had not been late on payments. (SUMF at ¶¶ 39, 46–48). In response to each dispute, Defendant reviewed the Account records, including payment history, account status, and application information, and verified that the reported information matched its records. (SUMF at ¶¶ 44, 53).

Defendant contends that on both occasions it responded to CRAs with the response code "01 – Account Information accurate as of date reported," as well as an account status of "97: Unpaid balance reported as a loss (charge off)." (SUMF at ¶¶ 40-41, 49-50).[8] (SUMF at ¶¶ 40, 49). Defendant states that in each instance, it confirmed the Account's charged-off status, payment history reflecting delinquency in early 2024, and the date of last payment.[9] (SUMF at ¶¶ 41–43, 50–52). Plaintiff alleges that these investigations were insufficient and that Defendant failed to properly account for his claims of fraud and identity theft. (Pl.'s Opp. at p. 2–3).

Throughout this period, Plaintiff maintains that the Account contained fraudulent or unauthorized charges, that he was not responsible for the reported debt, and that Defendant's reporting was inaccurate, incomplete, and inconsistent. (ECF No. 1-4 at p. 19; Pl.'s Opp. at p. 1–

---

[8] Again, upon review of the report, the Court found only a response code "01," without any accompanying evidence defining or explaining the meaning of that code. More significantly, neither report reflected an account status code in the "Response" portion of the "Account Information" section. (*See* Goldstein Dec., Ex. C at pp. 7, 9). The "Account Status" table contains separate rows for "Request" and "Response," as well as a column labeled "Account Status." (*Id.*). In both reports, the "Request" row lists an account status code of "97." (*Id.*). However, the corresponding "Account Status" field in the "Response" row is blank. (*Id.*).

[9] Upon review of the ACDV reports, the Court could not verify this assertion from the face of the reports themselves. The "Account Amounts" table contains separate rows for "Request" and "Response," along with columns for "Current Balance," "Amount Past Due," "Credit Limit," "High Credit/Orig Amount," and "Orig Charge Off Amount." (*See* Goldstein Dec., Ex. C at pp. 7, 9). In both reports, the fields in the "Request" row contain numerical entries. (*Id.*). However, the corresponding fields in the "Response" row are blank. (*Id.*). Accordingly, while Defendant asserts that it confirmed the Account's charged-off status and related account information, the Court cannot independently verify those confirmations from the face of the ACDV reports alone.

2). Plaintiff further alleges that despite submitting disputes and supporting information, Defendant failed to conduct a reasonable investigation or correct the alleged inaccuracies. (Pl.'s Opp. at p. 2–3). Plaintiff also claims that the reporting caused him financial harm, damage to his credit, and emotional distress. (ECF No. 1-4 at p. 1).

## III.   STANDARD OF REVIEW

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague

7

statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.   DISCUSSION

As a preliminary matter, the Court has deemed Plaintiff's original Complaint (ECF No. 1-4) as the operative pleading. Plaintiff's Amended Complaint was filed in contravention of Judge King's ASO, specifically, it was filed after the timeframe for amendment had elapsed, without requesting leave to amend, and without conferring with opposing counsel. Each of these actions alone could independently bar Plaintiff's Amended Complaint. In cumulation, it is clear that Plaintiff has utterly disregarded the Court's clear and unambiguous Order. As such, Plaintiff's Amended Complaint (ECF No. 26) is **STRICKEN**, and the Court will only address Plaintiff's FCRA claim as it is asserted in the operative Complaint (ECF No. 1-4).

### A.   Fair Credit Reporting Act

In the Complaint, Plaintiff asserts that Defendant violated 15 U.S.C. 1681s-2(b) by reporting inaccurate information to three major credit reporting agencies ("CRAs"), and subsequently failing to conduct a reasonable investigation into the inaccuracies upon receiving notification of the dispute from the CRAs. (ECF No. 1-4 at p. 1).

The FCRA governs consumer credit reporting and "'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014)(quoting *Cortez v. Trans*

8

*Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)).  As such, the FCRA imposes a myriad of obligations on CRAs and furnishers of credit information, like banks.  *Id.*

Section 1681s-2(a), outlining the duties of furnishers, prohibits furnishers from providing information to a consumer reporting agency which it has reasonable cause to believe is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A).  However, the Third Circuit explained that the FCRA precludes private suits for violations of § 1681s-2(a), leaving enforcement of that provision to federal and state officials. *Seamans*, 744 F.3d at 864.  A private suit may only be initiated pursuant to §1681s-2(b) after the furnisher is notified by a CRA of a consumer dispute concerning the accuracy or completeness of the information provided to a CRA by the furnisher.  *Id.*; 15 U.S.C. § 1681s-2(b).

The furnisher's receipt of a dispute triggers its duty to reasonably investigate to ensure the completeness and accuracy of the information furnished. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).  Specifically, a furnisher must, in pertinent part: 1) investigate the disputed information; 2) review all relevant information from the CRA; 3) report the results of the investigation to the CRA; and 4) if inaccurate or incomplete information is uncovered, report those results to all CRAs. *See* 15 U.S.C. § 1681s-2(b).  The furnisher's investigation must be reasonable.  The Third Circuit held that, like CRAs, furnishers must follow reasonable procedures concerning the accuracy of consumer data under the FCRA. *Seamans*, 744 F.3d at 864.  "[A] reasonable procedure is one 'that a reasonably prudent person would undertake under the circumstances.'"  *Id.* (quoting Cortez, 617 F.3d at 709). The issue of reasonableness is a "question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Id.* at 864-65.  Yet, the reasonableness of a furnisher's investigative procedures should be evaluated based on the content of the notice of dispute sent by the CRA. *Id.* at 865.

To state a claim under § 1681s-2(b), a plaintiff must first " make a prima facie showing

9

that the ... furnisher provided incomplete or inaccurate information." *Ritz v. Equifax Info. Servs., LLC*, No. 23-2181, 2025 WL 1303945, at *3 (3d Cir. May 6, 2025) (quoting *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023)). Accordingly, "if there is no threshold showing of inaccuracy, then the inquiry stops there and 'the reasonableness of the investigation is not in play.'" *Id.* (quoting *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)). Information that is factually incorrect is inaccurate. *Seamans*, 744 F.3d at 865. Additionally, information that is technically correct is nevertheless considered inaccurate "if, through omission, it 'create[s] a materially misleading impression.'" *Id.* Whether information is technically inaccurate is generally a question for the jury. *Id.*

In this case, Plaintiff's FCRA claim fails and Defendant is entitled to summary judgment because there are no genuine disputes as to any material fact that establishes that the information furnished by Defendant to the CRAs was factually or technically inaccurate. While Defendant, as the moving party, bears the initial burden to show that, based on the record, there are no triable issues, Plaintiff cannot defeat the motion for summary judgment by resting on his pleadings. *Matsushita Elec. Indus.*, 475 U.S. at 587. Instead, Plaintiff must "go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* Thus, Plaintiff must point to facts in the record that raise a genuine dispute regarding the factual or technical inaccuracy of information Defendant furnished to the CRAs.

At the summary judgment stage, when the primary evidence supporting inaccuracy stems from Plaintiff's own statements, "the ultimate question is whether self-serving testimony, 'when considered in conjunction with other evidence, is sufficient for a rational factfinder to credit [the declarant's] testimony, in spite of the testimony's self-serving nature.'" *Johns v. Nelnet*, No. CV 22-4791, 2026 WL 914621, at *23 (E.D. Pa. Mar. 31, 2026) (cleaned up). In *Johns*, the plaintiff

alleged that various defendants violated the FCRA by inaccurately reporting accounts that she contended were fraudulent. *See Id*. The primary evidence of inaccuracy as the result of fraud was the plaintiff's testimony. *Id*. The Court viewed that testimony in light of other evidence in the record, such as various email addresses attached to the allegedly fraudulent loans. *Id*. When considering the testimony in conjunction with the other record evidence, the Court held that "the email addresses used for certain accounts could be used in conjunction with Johns's self-serving testimony to credit her assertion of identity theft." *Id*.

The significance of *Johns* lies not in its outcome, but in its analytical approach. The court assessed whether the plaintiff's self-serving testimony was supported by independent record evidence that could permit a reasonable jury to credit her fraud allegations. Because corroborating evidence existed there, the claim survived summary judgment. Applying that same framework here, the Court reaches the opposite conclusion because the record lacks comparable corroborating evidence.

Here, Plaintiff argues that the Account is inaccurately reported because the charges were fraudulent. The primary evidence supporting these allegations are his own self-serving statements in the Complaint and his opposition papers. (*See* ECF No. 1-4 at p. 9; Pl.'s Dec. at ¶ 2; Pl.'s Opp. at p. 1.). The Court must consider those statements in conjunction with the evidence in the record that a reasonable jury could use to support Plaintiff's assertion. *Johns*, 2026 WL 914621, at *23. But Plaintiff does not point to any evidence in the record, other than his own assertions, to support his allegations of inaccuracy based on fraud. (*See* Pl.'s Dec.; *see also* Pl.'s Opp.). Given Plaintiff's *pro se* status, the Court independently reviewed the record as a whole and could not discern any additional evidence that could reasonably support Plaintiff's fraud assertions.

The Court acknowledges that in his Declaration, Plaintiff included a list of "Exhibits and

11

Supporting Proof," stating that he "attached the following Exhibits supporting [his] declaration." (Pl.'s Dec. at ¶ 10).[10] However, there were not any exhibits attached to either Plaintiff's Declaration or his Opposition papers. (*See generally* Pl.'s Dec.; Pl.'s Opp.). From the exhibit list, the only potential exhibits the Court could find in the record as a whole was an illegible copy of about a dozen certified mail receipts (*See* ECF No. 1-4 at p. 15), and a heavily redacted copy of what appears to be an Equifax credit report. (*See Id.* at pp. 4-6). Both of these documents were attached to the Complaint, not Plaintiff's opposition papers. (*See* ECF No. 1-4 at pp. 4-6, 15).

Nowhere in the record did Plaintiff produce, as he purported to in his exhibit list, an FTC Identity Theft Report, a Georgia driver's license, or denial letters from credit card companies. If he had, the Court could have considered that evidence in conjunction with his testimony to determine whether a reasonable jury could find that Defendant inaccurately reported the Account based on allegations of fraud. But as the record stands, it is completely devoid of any direct or circumstantial evidence that a reasonable jury could use to support Plaintiff's self-serving assertion that the charges on the Account were the result of fraud and therefore Defendant's reporting was inaccurate.

Since "[Plaintiff] failed to introduce any direct or circumstantial evidence that the [Defendant's] information was inaccurate or incomplete," *Tauro v. Cap. One Fin. Corp.*, 684 F. App'x 240, 243 (3d Cir. 2017), "the inquiry stops there and 'the reasonableness of the investigation is not in play.'" *Ritz*, 2025 WL 1303945 at *3 (quoting *Gross*, 33 F.4th at 1251). Accordingly, the Court must dismiss Plaintiff's claim against Defendant for violations of the FCRA.

---

[10] For reference, Plaintiff's exhibit list includes: "Exhibit A: Screenshots from SEC.gov and Bank of America 10-K and 8-K filings. Exhibit B: Denial letters from credit card companies. Exhibit C: False and inaccurate credit reports. Exhibit D: Georgia ID proving I was not in New Jersey when the fraud occurred. Exhibit E: Billing Error and Dispute Letters to Bank of America. Exhibit F: Certified mail receipts confirming delivery of my disputes. Exhibit G: Dividend Coupon and Bank of America letter confirming securitization. Exhibit H: FTC Identity Theft Report." (Pl.'s Dec. at ¶ 10).

12

**CONCLUSION**

For all of the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 58) is **GRANTED**. An order reflecting the same will be entered.

Dated: May 26, 2026

KAREN M. WILLIAMS
United States District Judge

13